```
            IN THE UNITED STATES DISTRICT COURT
             FOR THE SOUTHERN DISTRICT OF OHIO
                      EASTERN DIVISION
```

Dianne C. Engelhart,                :

     Plaintiff,                 :

  v.                                :     Case No. 2:15-cv-2937

                                       :     JUDGE ALGENON L. MARBLEY
Commissioner of Social Security,          Magistrate Judge Kemp
                                       :

     Defendant.

<u>REPORT AND RECOMMENDATION</u>

I. <u>Introduction</u>

Plaintiff, Dianne C. Engelhart, filed this action seeking review of a decision of the Commissioner of Social Security denying her application for disability insurance benefits. That application was filed on February 22, 2012, and alleged that Plaintiff became disabled on November 1, 2011. That date was later amended to July 4, 2012.

After initial administrative denials of her claim, Plaintiff was given a video hearing before an Administrative Law Judge on March 18, 2014. In a decision dated June 2, 2014, the ALJ denied benefits. That became the Commissioner's final decision on November 2, 2015, when the Appeals Council denied review.

After Plaintiff filed this case, the Commissioner filed the administrative record on January 4, 2016. Plaintiff filed a statement of specific errors on March 3, 2016, to which the Commissioner responded on June 15, 2016. Plaintiff filed a reply brief on July 5, 2016, and the case is now ready to decide.

II. <u>Plaintiff's Testimony at the Administrative Hearing</u>

Plaintiff, who was 52 years old as of the date of the hearing and who attended high school through the tenth grade, testified as follows. Her testimony appears at pages 105-131 of

the administrative record.

Plaintiff was first asked if she was working.  She said that she was employed as a home health aide but could work only two hours per day, or twelve hours per week.  Even on that schedule, she had been missing work due to pain and for doctors' appointments.  Her job duties included light housekeeping (dusting and doing dishes) and assisting her client in taking a bath.  She could sit and stand at will and did not do any lifting.  Before that, when she worked at a nursing home, she was on her feet all day.  She left that job because she could not work all of the hours that her employer requested.

Plaintiff obtained an STNA license in 2009.  She kept it current.

When asked how her condition had been since 2012, she said it had gotten worse.  She experienced pain, muscle spasms, numbness in her toes, and pain in her feet.  She had been treated with injections, including steroid injections in her hips to treat bursitis.  Her medications had caused her to develop acid reflux disease.  Plaintiff also used inhalers for bronchial asthma.  She was able to fix meals several times per week and occasionally did laundry.  She went grocery shopping with her husband and drove back and forth to work and to the library.  She was able to visit her children, to read, and to use a computer.

Plaintiff said she could walk for ten or fifteen minutes before having to stop and rest.  She could sit for about the same amount of time before getting stiff.  She could not rise from kneeling or crouching and could not bend over to touch her toes.  She suffered from sleep apnea, and also experienced muscle spasms while lying down which interfered with her sleep.  Everyday activities made her pain worse.  She was going to physical therapy when she could and also did home exercises.

III. The Medical Records

The pertinent medical records are found beginning at page 380 of the record and can be summarized as follows. Since the statement of errors focuses on the vocational testimony and on Plaintiff's fibromyalgia, the Court's summary of the records will be limited to those which are relevant to the issues Plaintiff has raised.

Dr. Sethi conducted a physical examination of Plaintiff on July 31, 2012. At that time, she said she suffered from osteoarthritis, fibromyalgia, asthma, chronic bronchitis, a history of cystitis, and depression. Plaintiff told Dr. Sethi that her arthritis specialist had diagnosed fibromyalgia because "her pains were general and everywhere." It does not appear that Dr. Sethi did any particular tests to confirm the presence of fibromyalgia, and he concluded that Plaintiff was capable of medium work. (Tr. 494-96). A prior note from a rheumatology consultant, Dr. Stainbrook, listed 31 different impressions, one of which was fibrositis/fibromyalgia. (Tr. 503-06). That was consistent with one of his earlier notes. (Tr. 542-45). Most of the medical records show that she was treated for low back and hip pain, although Plaintiff did report diffuse joint pain to her regular doctor and was diagnosed with generalized osteoarthritis. There are no other references to fibromyalgia in the medical records, and it was not specifically indicated as a diagnosis by the state agency reviewers, who characterized Plaintiff's physical impairments as "osteoarthritis and allied disorders." See, e.g., Tr. 165.

IV. The Vocational Testimony

Patricia Posey was called to testify as a vocational expert at the administrative hearing. Her testimony begins at page 132 of the administrative record.

Ms. Posey first testified about Plaintiff's past relevant

-3-

work.  She said that the prep cook job which Plaintiff had done on different occasions was a medium, semi-skilled job.  Plaintiff had also worked as a sales clerk and stock person, which was medium and unskilled, and had a light unskilled job in a factory.  Finally, the home health aide job was listed in the DOT as medium and semi-skilled, but the way Plaintiff currently performed it, it was a light job.

    Next, Ms. Posey was asked some questions about someone with Plaintiff's background and who could work at the medium exertional level but could not climb ladders, ropes, or scaffolds, could stoop, kneel, crouch, and crawl occasionally, and could also occasionally climb stairs and ramps.  Further, the person could not be exposed more than occasionally to pulmonary irritants such as fumes, odors, dust, and gas.  Ms. Posey said that someone with those restrictions could do Plaintiff's past work as a home health aide.  If the person could frequently stoop and crouch, the factory and prep cook jobs would also be available.  Changing the exertional level to light would still be consistent with the past jobs of home health aide as Plaintiff performed it as well as cashier and production inspector.  Additionally, such a person could be employed as a shipping and receiving clerk, laundry folder, or cleaner.  Ms. Posey gave numbers for those jobs in both the regional and national economies.

    Next, Ms. Posey was asked how the need to change positions between sitting and standing every fifteen minutes would affect the ability to do those jobs.  The precise question posed was this: "If I added to that last hypothetical that the individual requires sit stand option, sitting 10 to 15 minutes at a time, and standing 10 to 15 minutes at a time as needed with that duration while on task, do the jobs that you just provided remain?"  (Tr. 141).  She said no, but that Plaintiff could still

do her current senior service aide job.  Plaintiff was then asked if she had ever been employed full-time where she was allowed to sit or stand at will and had to lift ten pounds or less, and she said she was not.  Ms. Posey was questioned further after that testimony, and after first saying that she did not think that someone changing positions every fifteen minutes could stay on task, she then identified a number of light jobs which the hypothetical person could perform even if he or she had to change positions frequently, based on the assumption that the person could stay on task.  Those jobs included self-service gasoline cashier, merchandise marker, and food sorter.

A different hypothetical question was then asked which described a person who was able to work at the light exertional level with all of the limitations previously described except that, instead of a sit-stand option, the person could stand and walk for up to four hours in a day and sit for up to four hours.  In response to that question, Ms. Posey identified three possible jobs, including laundry worker, hand packer, and rental clerk in a storage facility.  She also said that someone who would miss two days of work per month could not sustain unskilled employment.

V.  The Administrative Law Judge's Decision

The Administrative Law Judge's decision appears at pages 80-94 of the administrative record.  The important findings in that decision are as follows.

The Administrative Law Judge found, first, that Plaintiff met the special earnings requirements of the Social Security Act through December 31, 2016.  Second, she found that Plaintiff had not engaged in substantial gainful activity since her amended alleged onset date.  Going to the next step of the sequential evaluation process, the ALJ concluded that Plaintiff had severe impairments including chronic tendinopathy of the right hip,

-5-

trochanteric bursitis, bronchitis/asthma, osteoarthritis, degenerative changes to the lumbar spine with facet arthrosis at L4-4, and L5 lumbar radiculopathy.  The ALJ also found that these impairments did not, at any time, meet or equal the requirements of any section of the Listing of Impairments (20 C.F.R. Part 404, Subpart P, Appendix 1).

Moving to the next step of the sequential evaluation process, the ALJ found that Plaintiff had the residual functional capacity to perform work at the light exertional level although she could not climb ladders, ropes, or scaffolds, could crawl and climb stairs and ramps and only occasionally, and could stoop, kneel, and crouch frequently.  Further, Plaintiff was able to stay on task although she needed to change positions every ten to fifteen minutes.  Lastly, Plaintiff could not be exposed more than occasionally to pulmonary irritants such as fumes, odors, dust, and gas.

With these restrictions, the ALJ concluded that Plaintiff could not do any of her past relevant work, but she could perform the jobs identified by the vocational expert, including self-service gasoline cashier, merchandise marker, and food sorter. The ALJ further determined that these jobs existed in significant numbers in the regional and the national economy.  Consequently, the ALJ decided that Plaintiff was not entitled to benefits.

VI.  <u>Plaintiff's Statement of Specific Errors</u>

In her statement of specific errors, Plaintiff raises these issues: (1) the ALJ's step five finding was based on unreliable testimony from the vocational expert; and (2) the ALJ erred by not finding that Plaintiff's fibromyalgia was a severe impairment.  These issues are evaluated under the following legal standard.

<u>Standard of Review.</u>  Under the provisions of 42 U.S.C. Section 405(g), "[t]he findings of the Secretary [now the

Commissioner] as to any fact, if supported by substantial evidence, shall be conclusive. . . ." Substantial evidence is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion'" Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consolidated Edison Company v. NLRB, 305 U.S. 197, 229 (1938)). It is "'more than a mere scintilla.'" Id. LeMaster v. Weinberger, 533 F.2d 337, 339 (6th Cir. 1976). The Commissioner's findings of fact must be based upon the record as a whole. Harris v. Heckler, 756 F.2d 431, 435 (6th Cir. 1985); Houston v. Secretary, 736 F.2d 365, 366 (6th Cir. 1984); Fraley v. Secretary, 733 F.2d 437, 439-440 (6th Cir. 1984). In determining whether the Commissioner's decision is supported by substantial evidence, the Court must "'take into account whatever in the record fairly detracts from its weight.'" Beavers v. Secretary of Health, Education and Welfare, 577 F.2d 383, 387 (6th Cir. 1978) (quoting Universal Camera Corp. v. NLRB, 340 U.S. 474, 488 (1951)); Wages v. Secretary of Health and Human Services, 755 F.2d 495, 497 (6th Cir. 1985). Even if this Court would reach contrary conclusions of fact, the Commissioner's decision must be affirmed so long as that determination is supported by substantial evidence. Kinsella v. Schweiker, 708 F.2d 1058, 1059 (6th Cir. 1983).

     A.  The Reliability of the Vocational Testimony

As more fully set forth above, the vocational expert, Patricia Posey, was asked a number of different hypothetical questions, in response to which she identified a number of different jobs which someone with Plaintiff's physical and mental limitations (as found by the ALJ) could perform. The key question was the one asked at Tr. 141, which incorporated a sit-stand option, with the need to change positions every fifteen minutes, and an assumption that even with such postural changes the person could still attend to task. After initially disputing

the premise of that question, Ms. Posey replied that if someone could attend to task while shifting positions frequently, there were jobs the person could perform.  Those are the jobs which the ALJ relied on in determining that Plaintiff was still capable of substantial gainful employment.

Plaintiff's argument that the ALJ's decision was based on unreliable vocational testimony focuses not so much on the answer to this one question, but to the process leading up to it.  She correctly points out that after Ms. Posey gave her first answer to the question - an answer in which she said that "I don't think I - even though the individual could attend to task while changing the position that frequently, it's my opinion that there would not be light jobs that would allow the individual to make that many position changes," Tr. 152, the ALJ began suggesting jobs which provided for a sit-stand option, such as parking lot attendant, hand packager, and assembler.  Id.  In response to what amounted to an objection from Plaintiff's counsel, the ALJ said "I'm going to insure that the VE is not overlooking anything ... If she [] is confident that there are no jobs based on this hypothetical, then I'm confident that will be her testimony." (Tr. 153).  Ms. Posey then provided the answer identifying the cashier, marker, and food sorter jobs as "light, unskilled occupations, which in my opinion could accommodate – could allow an individual to change position and as long as they remained on task, to carry out those work activities."  (Tr. 154).  According to Plaintiff, the ALJ placed herself in an adversarial role by questioning the vocational expert in this way and interjected irrelevant information into the process by including observations based on testimony in other cases about individuals with sit-stand options who could perform some types of jobs.

The Commissioner's response is brief.  It first suggests, incorrectly, that the ALJ could have found that, with the

-8-

restrictions at issue, Plaintiff could have returned to her past work as a home health aide. However, the ALJ specifically found she could not do any of her past relevant work. (Tr. 92). The Commissioner then concludes, without offering much in the way of supporting argument, that the ALJ "properly relied" on Ms. Posey's testimony. Doc. 14, at 5.

There is no question that, in order for an ALJ properly to rely on testimony given by a vocational expert, that testimony must satisfy the "substantial evidence" standard. The Court of Appeals has said that "[s]ubstantial evidence may be produced through reliance on the testimony of a vocational expert in response to a 'hypothetical' question, but only 'if the question accurately portrays [plaintiff's] individual physical and mental impairments.'" Varley v. Secretary of Health & Human Services, 820 F.2d 777, 779 (6th Cir. 1987). Stated in a more positive way, "a hypothetical question accurately portraying a claimant's vocational abilities and limitations can provide substantial evidence to meet the Commissioner's burden at the fifth step of the sequential evaluation process." Lee v. Comm'r of Social Security, 529 Fed.Appx. 706, 715 (6th Cir. July 9, 2013).

The typical attack on the reliability of the vocational testimony is that the hypothetical question did not accurately portray the claimant's limitations and the ALJ therefore was not entitled to consider the answer as substantial evidence. See, e.g., White v. Comm'r of Social Security, 312 Fed.Appx. 779, 789 (6th Cir. Feb. 24, 2009)(remanding case where the hypothetical question did not accurately portray the claimant's limitations). That is not, however, the challenge which Plaintiff has presented here. She has not argued that the most significant part of the key hypothetical question - that she could stay on task even while changing positions as often as every fifteen minutes - inaccurately reflects her physical or mental capability. Nor has she argued that such a determination is not properly part of the

residual functional capacity finding but is strictly a vocational issue. Ms. Posey's first answer to the question seemed to assume that this might be a vocational issue, thus explaining her statement that a person changing positions with such frequency cannot stay on task, but she then answered the question as asked, saying that if such a person were actually capable of staying on task through this succession of position changes, there were jobs which would permit such position changes. Because Plaintiff has not attacked the ALJ's residual functional capacity finding as to this particular ability, the Court cannot second-guess that finding. In other words, the Court must accept the finding as supported by substantial evidence because Plaintiff has not argued otherwise. Based on the law cited above, which holds that a vocational expert's response to an accurate question about a claimant's abilities constitutes substantial evidence to support a finding about employability - and because the Court finds no reversible error in the manner of the ALJ's questioning of the expert, since it does not appear to have affected her answer in any substantial way - this Court must overrule Plaintiff's first statement of error.

### B. Fibromyalgia as a Severe Impairment

Plaintiff's only other argument is that the ALJ should have found her fibromyalgia to be a severe impairment. She notes that the ALJ incorrectly concluded that fibromyalgia, although mentioned in the record, was never actually diagnosed, citing to the evidence which the Court has summarized above. The Commissioner responds that any error was harmless because Plaintiff has not pointed to any additional physical limitations which have been attributed to her fibromyalgia.

The ALJ did appear to overlook the fact that fibrositis or fibromyalgia was listed as one of 31 "impressions" in the May 2, 2012 letter from Dr. Stainbrook. It was also mentioned in a March 19, 2012 letter, and Dr. Stainbrook said he gave Plaintiff

-10-

materials about fibromyalgia and recommended physical therapy, generalized stretching, and aerobic exercise. (Tr. 542-45). Despite Plaintiff's claim that Dr. Stainbrook also found positive trigger points, the Court does not see that finding specifically indicated on the transcript page (508) to which Plaintiff cites - that chart shows only that Plaintiff had tenderness in various joints - and records from Dr. Merrill from about the same time reflect "no scoliosis, paravertebral spasm, tender points, trigger points, or somatic dysfunction." (Tr. 513). Thus, there is scant evidence of fibromyalgia, although the ALJ did not seem to credit even the evidence which is in the record.

In this case, however, the Court agrees with the Commissioner that any error is harmless. The failure to recognize certain impairments as severe is, at most, harmless error if the ALJ takes any limitations caused by those impairments into account when assessing a claimant's residual functional capacity. See, e.g., Taylor v. Astrue, 2012 WL 870770, *5 (S.D. Ohio March 14, 2012), adopted and affirmed, 2012 WL 1268178 (S.D. Ohio April 13, 2012), citing Maziarz v. Sec'y of HHS, 837 F.2d 240, 244 (6th Cir. 1987). Despite Plaintiff's argument that her fibromyalgia is severe and imposes more than minimal restrictions on her work-related abilities, she has not either identified any medical record which attributes any decrease in her work abilities to her fibromyalgia (and there do not appear to be any such records), nor has she suggested any limitations arising from that disease which were not reflected in the ALJ's residual functional capacity finding based on the severe physical impairments which he found to exist, including tendinopathy, bursitis, osteoarthritis, degenerative changes in the spine, and lumbar radiculopathy. Given the absence of any evidence that, had the ALJ found fibromyalgia to be a severe impairment, her residual functional capacity finding would have been different, there is no basis on which to order a remand

which would not have any effect on the outcome of the case.  For that reason, the Court finds no merit in this second statement of error.

### VII.  Recommended Decision

Based on the above discussion, it is recommended that the Plaintiff's statement of errors be overruled and that judgment be entered in favor of the defendant Commissioner of Social Security.

### VIII.  Procedure on Objections

If any party objects to this Report and Recommendation, that party may, within fourteen (14) days of the date of this Report, file and serve on all parties written objections to those specific proposed findings or recommendations to which objection is made, together with supporting authority for the objection(s). A judge of this Court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made.  Upon proper objections, a judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made herein, may receive further evidence or may recommit this matter to the magistrate judge with instructions.  28 U.S.C. §636(b)(1).

The parties are specifically advised that failure to object to the Report and Recommendation will result in a waiver of the right to have the district judge review the Report and Recommendation de novo, and also operates as a waiver of the right to appeal the decision of the District Court adopting the Report and Recommendation.  See Thomas v. Arn, 474 U.S. 140 (1985); United States v. Walters, 638 F.2d 947 (6th Cir. 1981).

/s/ Terence P. Kemp
United States Magistrate Judge