**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | | |
|---|---|---|
| **DIANNE C. ENGELHART,** | : | |
| | : | |
| Plaintiff, | : | Case No. 2:15-cv-2937 |
| | : | |
| v. | : | **JUDGE ALGENON L. MARBLEY** |
| | : | |
| **COMMISSIONER OF** | : | **Magistrate Judge Kemp** |
| **SOCIAL SECURITY,** | : | |
| | : | |
| Defendant. | : | |

**OPINION & ORDER**

This matter comes before the Court for consideration of Dianne C. Engelhart's Objection to Magistrate Judge Kemp's September 26, 2016 **Report and Recommendation** (Doc. 16), which recommends that this Court overrule Engelhart's Statement of Specific Errors (Doc. 9) and affirm the Commissioner of Social Security's decision. Upon independent review by this Court, and for the reasons set forth below, Engelhart's Objection is hereby **OVERRULED**. The Court **ACCEPTS** and **AFFIRMS** the Magistrate Judge's **Report and Recommendation**.

**I. BACKGROUND**

Dianne Engelhart applied for supplemental security income ("SSI") on February 22, 2012. She alleged that she became disabled on November 1, 2011, but later amended her date of disability to July 4, 2012. After initial administrative denials of her application, an Administrative Law Judge ("ALJ") conducted a video hearing on March 18, 2014, and, on June 2, 2014, issued a decision denying her application after finding that she was not disabled under Sections 216(i) and 223(d) of the Social Security Act.

1

In her opinion denying benefits, the ALJ conducted the required five-step sequential analysis for a disabilities benefits claim. *See* 20 C.F.R. § 416.920(a)(4).[1] At step one, the ALJ determined that Englehart has not engaged in substantially gainful activity since her disability date of July 4, 2012.

At step two, the ALJ found that Engelhart suffered from the following severe impairments: chronic tendinopathy of the right hip, trochanteric bursitis; bronchitis/asthma, osteoarthritis; degenerative changes to the lumbar spine with facet arthrosis at L4-5; and L5 lumbar radiculopathy.

---

[1] The five sequential steps are as follows:

> (i) At the first step, we consider your work activity, if any. If you are doing substantial gainful activity, we will find that you are not disabled. . . .
>
> (ii) At the second step, we consider the medical severity of your impairment(s). If you do not have a severe medically determinable physical or mental impairment that meets the duration requirement in § 404.1509, or a combination of impairments that is severe and meets the duration requirement, we will find that you are not disabled. . . .
>
> (iii) At the third step, we also consider the medical severity of your impairment(s). If you have an impairment(s) that meets or equals one of our listings in appendix 1 to subpart P of part 404 of this chapter and meets the duration requirement, we will find that you are disabled. . . .
>
> (iv) At the fourth step, we consider our assessment of your residual functional capacity and your past relevant work. If you can still do your past relevant work, we will find that you are not disabled. . . .
>
> (v) At the fifth and last step, we consider our assessment of your residual functional capacity and your age, education, and work experience to see if you can make an adjustment to other work. If you can make an adjustment to other work, we will find that you are not disabled. If you cannot make an adjustment to other work, we will find that you are disabled. . . .

20 C.F.R. § 416.920(a)(4).

At step three, the ALJ further found that these impairments, whether taken alone or in combination, did not meet or medically equal one of the listed impairments described in 20 C.F.R. Part 404, Subpart P, Appendix 1.

At step four, the ALJ found that Engelhart has the residual functional capacity ("RFC") to "perform light work" with some accommodations, including "a sit/stand option" and "never climbing ladders or scaffolds." (Admin. R., Doc. 5-2, PageID 114). The ALJ further found that this RFC prevented Engelhart from being able to perform any past relevant work.

At step five, the ALJ found that jobs exist in significant numbers within the national economy such that Engelhart, even with her age, education, work experience, and RFC, could obtain employment. The ALJ's step-five determination was based primarily on testimony from a vocational expert ("VE") and now forms the crux of this dispute.

At the hearing, the ALJ posed a hypothetical to the VE about someone with Engelhart's background, RFC, and relevant accommodations. The ALJ then asked how the need to change positions between sitting and standing every fifteen minutes would affect the hypothetical person's ability to do those jobs, assuming that the person could remain on task. The VE first replied that "even though the individual could attend to task while changing positions that frequently, it's my opinion that there would not be light jobs that would allow the individual to make that many position changes." (*Id.* at PageID 179). Upon further questioning by the ALJ, however, the VE determined that a person facing the restrictions posed in the hypothetical could perform work as a self-service gasoline cashier, merchandise marker, and food sorter—all "light, unskilled occupations, which in my opinion could accommodate [the hypothetical employee]." (*Id.* at PageID 181). Consequently, the ALJ concluded that Engelhart was not disabled under the Social Security Act. (*Id.* at PageID 93).

3

The Appeals Council denied Engelhart's request for review of the ALJ's determination on September 1, 2015, and again November 2, 2015, thus rendering the ALJ's benefits-denial decision the Commissioner's final agency action. (*Id.* at PageID 28). Engelhart then filed suit in federal court, alleging in her Statement of Errors that the ALJ's step-five finding was based on unreliable testimony from the VE and that the ALJ erred in not finding Engelhart's fibromyalgia to be a severe impairment. (Statement of Errors, Doc. 9, PageID 845).

On September 26, 2016, the Magistrate Judge issued a Report and Recommendation, recommending that this Court overrule Engelhart's Statement of Errors and affirm the Commissioner's decision denying benefits. (Doc. 16). The Magistrate Judge first noted that "for an ALJ properly to rely on testimony given by a vocational expert, that testimony must satisfy the 'substantial evidence' standard." (*Id.* at PageID 888). The Magistrate Judge then noted that the substantial evidence standard can be met "through reliance on the testimony of a vocational expert in response to a 'hypothetical question,'" assuming "the question accurately portrays [plaintiff's] individual physical and mental impairments." (*Id.* (quotation omitted)). The Magistrate concluded, however, that "the Court cannot second-guess [the ALJ's] finding" in this case because Engelhart did not challenge the accuracy of the ALJ's hypothetical questions regarding her limitations and accommodations but, rather, challenged only the ALJ's persistence in following up to obtain an answer. (*Id.* at PageID 888-89). The Magistrate Judge also concluded that, while the ALJ may have overlooked Engelhart's fibromyalgia as a severe impairment, any error was harmless. (*Id.* at PageID 889-91). Engelhart timely objected to the Magistrate Judge's Report and Recommendation regarding the reliability of the VE's testimony. (Doc. 17).

4

## II. STANDARD OF REVIEW

Upon objection to a magistrate judge's report and recommendation, this Court must "make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1); *see* Fed. R. Civ. P. 72(b). This de novo review, in turn, requires the Court to "determine whether the record as a whole contains substantial evidence to support the ALJ's decision" and to "determine whether the ALJ applied the correct legal criteria." *Inman v. Astrue*, 920 F. Supp. 2d 861, 863 (S.D. Ohio 2013). Substantial evidence means relevant evidence that "a reasonable mind might accept as adequate to support a conclusion." *Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504, 512 (6th Cir. 2010) (quotation omitted). Substantial evidence constitutes "more than a mere scintilla, but only so much as would be required to prevent judgment as a matter of law against the Commissioner if this case were being tried to a jury." *Inman*, 920 F. Supp. 2d at 863 (citing *Foster v. Bowen*, 853 F.2d 483, 486 (6th Cir. 1988)).

Even if a Social Security Administration ("SSA") decision is "supported by substantial evidence, 'a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.'" *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009) (quoting *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2007)). In other words, "[a]n ALJ's failure to follow agency rules and regulations denotes a lack of substantial evidence, even where the conclusion of the ALJ may be justified based upon the record." *Cole v. Astrue*, 661 F.3d 931, 937 (6th Cir. 2011) (quotation omitted); *see also Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 374 (6th Cir. 2013) (same).

### III. ANALYSIS

Engelhart objects to the Magistrate Judge's Report and Recommendation solely on the basis that the ALJ's step-five determination was not supported by reliable VE testimony. Within this objection, Engelhart mentions two sub-points of contention. The first is that the ALJ's interaction with the VE allegedly tainted her testimony; the second is that the ALJ purportedly failed to follow SSA's Hearings, Appeals, and Litigation Law Manual ("HALLEX") when questioning the VE and, in so doing, prejudiced Engelhart's claim to benefits.

### A. The ALJ's Interaction with the VE Does Not Require Reversal.

Engelhart objects to the Magistrate Judge's finding that the ALJ's determination at step five was supported by reliable VE testimony and, therefore, was supported by substantial evidence. The Magistrate accurately noted that, in her Statement of Errors, Engelhard did not actually challenge the hypotheticals that the ALJ posed to the VE. That is, Engelhard did not allege that the ALJ failed to accurately portray her limitations or necessary accommodations. Instead, Engelhart merely alleged that the ALJ's questioning tainted the VE's testimony. Reviewing the record in its entirety, this Court disagrees with Engelhart.

The Magistrate Judge's characterization of the exchange between the VE and ALJ as "benign" is wholly appropriate. In response to the hypothetical posed by the ALJ, the VE initially disputed the premise of the hypothetical before giving an answer. The ALJ then asked follow-up questions, which drew derision and, ultimately, an objection from Engelhart's attorney. Upon gathering her thoughts, the VE then stated her opinion that an individual with the hypothetical limitations could find work in a handful of positions at the light level. The relevant exchange is reprinted below:

ALJ: Okay, so back to the last hypo that I left with. You said that the senior service aide was available with the sit stand option --

VE: Correct.

ALJ: -- as I described it and the other jobs were ruled out. Can you identify other jobs based on that hypothetical?

VE: At the light level, perhaps, give me a moment. Your honor, I don't think I -- even though the individual could attend to task while changing the position that frequently, it's my opinion that there would not be light jobs that would allow the individual to make that many position changes.

ALJ: How about parking lot attendant?

ATTY: Your honor, did you address that to me? I couldn't hear you.

ALJ: No, I asked the VE what about parking lot attendant, what about hand packager --

ATTY: Oh, okay.

ALJ: -- what about – I'm trying to think of other jobs that have been sit, stand has been provided for in the past. I need to keep a running list. Those two come to mind, assembler maybe.

VE: Would you give me a moment, please.

ATTY: Your honor, are you testifying as a vocational expert now?

ALJ: No, I'm not, but thanks for asking.

ATTY: It does seem that way.

ALJ: I specifically said what I'm asking, counsel.

ATTY: I know, your honor, but --

ALJ: I said I recall specific jobs that have been identified in the past --

ATTY: At other hearings --

ALJ: -- and I just want some clarification.

7

> ATTY: -- at other hearings, not involving these facts. I don't think that has anything to do with this hearing.
>
> ALJ: With similar -- with similar RFCs, counsel. I want to be sure that --
>
> ATTY: Are you going to provide me transcripts of those hearings, your honor?
>
> ALJ: I'm going to ensure that the VE is not overlooking anything, counsel. If she -- if she is confident that there are no jobs based on this hypothetical, then I'm confident that will be her testimony.
>
> ATTY: All right, your honor, as long as you're not badgering her. It just seems to me like you're putting words into her mouth, offering testimony, and bringing in evidence that doesn't have anything to do with this case, and I object -- I object --
>
> ALJ: Rejections [sic] noted --
>
> ATTY: -- strenuously.
>
> ALJ: -- and I noted your objection before you objected. It's noted.
>
> ATTY: Great.
>
> VE: Your honor, I believe such an individual could work as a self-service gasoline cashier . . . . I believe such an individual could work as a merchandise marker . . . . I believe such an individual could work as a food sorter. . . . These are light, unskilled occupations, which, in my opinion could accommodate – allow an individual to change position and as long as they remained on task, to carry out those work activities.

(Admin. R., Doc. 5-2, PageID 179-81).

Engelhart now argues that, because the ALJ continued to question the VE about the availability of suitable jobs in the national and regional economy *after* obtaining a definitive answer, standards relating to "administrative notice" of certain facts should apply. But this conclusion mischaracterizes the exchange entirely. The ALJ did not take "administrative notice" of any fact, nor did she put words into the VE's mouth. Instead, the ALJ asked appropriate follow-up questions and then left it to the VE to answer.

8

Indeed, when Engelhart's attorney later accused the VE of "chang[ing] [her] testimony," the VE clarified the earlier exchange as follows: "I did not change my testimony. What I did was in a way make an observation and then recall that the judge had already said that the individual could remain on task. Therefore, it's my opinion there were jobs, which I offered." (*Id.* at PageID 184). This testimony clarifies the disputed exchange by showing that the VE was initially disputing whether Engelhart could remain on task with the sit/stand requirement. With remaining on task being a given of the hypothetical, however, the VE had no difficulty offering at least three jobs that matched the criteria of the hypothetical. In no way did the ALJ's follow-up questions "taint" the VE's testimony. If anything, the ALJ's questioning helped clarify the VE's testimony by reminding her of the parameters of the hypothetical.

### B.  The ALJ Did Not Violate "HALLEX."

Engelhart also objects to the Magistrate Judge's recommendation regarding the ALJ's step-five determination on the grounds that: (1) the ALJ did not follow HALLEX § I-2-6-74 ("Testimony of a Vocational Expert"); and (2) she is sufficiently prejudiced by the ALJ's failure to follow those guidelines.

The HALLEX manual "defines procedures for carrying out policy and provides guidance for processing and adjudicating claims at the Hearing, Appeals Council[,] and Civil Actions levels." HALLEX § I-1-0-1, 2005 WL 1863821, at *1 (June 21, 2005). HALLEX guidelines, however, do not bind the courts in this circuit. *Bowie v. Comm'r of Soc. Sec.*, 539 F.3d 395, 399 (6th Cir. 2008). Further, no procedural due process rights arise from HALLEX procedures. *Lawrence v. Colvin*, No. 3:13-032-DCR, 2014 WL 640990, at *4 (E.D. Ky. Feb. 18, 2014) (collecting cases). Consequently, even if the Commissioner failed to follow HALLEX procedures, such a fact would not necessarily entitle Engelhart to relief. *Id.*

9

Some courts, however, have granted relief where a plaintiff can demonstrate sufficient prejudice from nonobservance of the HALLEX procedures. *Estep v. Astrue*, No. 2:11-0017, 2013 WL 212643, at *12 (M.D. Tenn. Jan. 18, 2013) (collecting cases). Engelhart urges the Court to follow this minority view here.

Even if the Court were to accept Engelhart's invitation, the Commissioner's decision would still stand because the ALJ did not violate HALLEX as alleged. HALLEX § I-2-6-74 provides detailed instructions for how to handle the testimony of a VE. Engelhart alleges that the ALJ failed to follow Section B of this guideline, which states that "the ALJ must rule on any objection(s)." HALLEX § I-2-6-74(B). Engelhart bases her argument on the exchange that occurred between the ALJ and her attorney during the ALJ's questioning of the VE. Engelhart's attorney objected to the ALJ's follow up statement to the VE when the ALJ said, "I'm trying to think of other jobs that have been sit, stand has (*sic*) been provided for in the past . . . ." (Admin. R., Doc. 5-2, PageID 179). Engelhart's attorney responded to the ALJ's comments by saying, "It just seems to me like you're putting words into her mouth, offering testimony, and bringing in evidence that doesn't have anything to do with the case, and I object – I object." (*Id.* at PageID 180-81).

The Court finds Engelhart's argument unconvincing because it elevates form over substance. While admittedly more in principle than in form, the ALJ still followed the HALLEX guideline as she ruled on the objection during the exchange. In acknowledging the objection by Engelhart's attorney, the ALJ stated, "I'm going to insure that the VE is not overlooking anything, counsel. If she -- if she is confident that there are no jobs based on this hypothetical, then I'm confident that will be her testimony." (*Id*. at PageID 180).

Here, the ALJ acknowledged the objection from Engelhart's attorney and clarified the purpose of her questioning in light of that objection.  These follow up statements from the ALJ amount to a ruling on the objection.  Further evidence comes from the ALJ's statement immediately following the Attorney's objection.  The ALJ's statement, "and I noted your objection before you objected," shows that the ALJ understood that the attorney's statements amounted to an objection and that she was responding to them in kind.  (*Id*. at PageID 181).  Because the ALJ addressed Engelhart's objection during the hearing, the Court overrules her objection to the Magistrate Judge's Report and Recommendation based on the ALJ's purported failure to follow HALLEX.

Furthermore, even if the ALJ did not strictly follow the HALLEX guidelines, Engelhart has not shown how she was prejudiced by the departure from those guidelines, as required even under the minority view.  *See Estep*, 2013 WL 212643, at *12 ("In this case, the plaintiff has made no allegation of prejudice and none is apparent from the record.  Consequently, he is not entitled to relief on this [HALLEX] issue.").  Thus, she is not entitled to relief.

## IV.  CONCLUSION

For these reasons, the Court **ACCEPTS** and **AFFIRMS** Magistrate Judge Kemp's **Report and Recommendation** (Doc. 16), thereby **OVERRULING** Engelhart's objection (Doc. 17).  The Commissioner's denial of benefits is **AFFIRMED**.  This case is hereby **DISMISSED**.

**IT IS SO ORDERED.**

    /s/ Algenon L. Marbley
**ALGENON L. MARBLEY**
**UNITED STATES DISTRICT JUDGE**

**DATED:  March 1, 2017**